(10 App. Div. 50.)

## LIEBER v. FRIEDLANDER.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

MASTER AND SERVANT—YEARLY HIRING—EVIDENCE.

A finding that plaintiff was hired by defendant for a year is not sustained by the evidence where plaintiff's testimony to that effect was contradicted by defendant and his witnesses, and a receipt given by defendant for money deposited with him by plaintiff on entering the employment recites that the deposit was to secure plaintiff's good faith, honesty, and integrity, and conformity with the rules of defendant's business, and that the consideration of the deposit was the payment to plaintiff of $30 per week with the security instead of $27 per week without the security; though plaintiff left the labor union of which he was a member in order to enter defendant's service. O'Brien and Rumsey, JJ., dissenting.

Appeal from trial term, New York county.

Action by Nathan Lieber against Alford Friedlander for wrongful discharge of plaintiff from defendant's employ. From a judg-

ment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals.    Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

F. Spiegelberg, for appellant.
G. S. Drachman, for respondent.

VAN BRUNT, P. J.    This action was brought to recover damages occasioned by the alleged wrongful discharge of the plaintiff from the defendant's employ.    The question involved was whether the plaintiff was employed for a year, or whether the hiring was a weekly one. ·  The plaintiff was the only witness upon his own behalf, and several witnesses were examined upon the part of the defendant.    There is no error alleged in the rulings of the court upon the trial, but it is claimed upon this appeal that the verdict is against the weight of evidence.    It is conceded upon the part of the defendant that the weight of evidence does not depend upon the number of witnesses, but rather upon the character of the testimony given, and the facts surrounding the transactions.    Upon an examination of the record in this case we are of opinion that the verdict in question is decidedly against the weight of evidence, and that the story of the plaintiff is successfully impeached by the only writing which is connected with the transaction, and by the testimony of the numerous witnesses whose evidence is more credible and satisfactory than that of the plaintiff.    The plaintiff testified that in the year 1893 he was employed by Adolf Hochstadter & Co., and that his friend Mr. Beller, who was in the employ of the Children's Cloak Company (under which name the defendant did business), asked him whether he was willing to go into the defendant's employ as a nonunion man.    In pursuance of this conversation he went to the office of the defendant the next day, at the dinner hour.    This was the first week in January, and on a Saturday afternoon.    He saw there a Mr. Reiman, the defendant's manager, who told him the story of the trouble he had in the house in regard to the union cutters, and then asked the plaintiff whether he was willing to go against the union, and to work for the defendant.    The plaintiff said "Yes," if he could better himself, he would do that.    Reiman inquired: "Q. What do you ask a week?"    The plaintiff said: "A. I am getting in the old place $24, and I am well liked in the organization.    I belong to it years and years.    On account of hating myself—between myself and my brothers—so well, I will accept $30 a week."    Reiman said: "All right, I am willing to give you that; and I will give you my word of honor that I will give you engagement for a whole year."    The plaintiff thereupon said: "All right; I believe you.    I take your word for it."    Mr. Reiman then said: "Well, if you are agreed upon what I say, you can go upstairs, and fix yourself up.    It is Saturday afternoon.    The cutters are not upstairs.    You can go upstairs, and fix yourself up for Monday morning.    You will be ready so as to give them work."    The plaintiff then went upstairs and

got ready for work on Monday morning. He further testified that nothing was said in regard to a salary of $27 a week. The witness then testified that he went home on Saturday night perfectly satisfied with the agreement, but, after considering whether he should take the man's word for real truth, he did not go to work on Monday morning, but waited to make up his mind as to whether he should believe the man or not, because it seemed to him the way the man looked at him— (Here the witness was interrupted.) The witness then further testified:

"So I went down town dinner hour, on the corner of Broadway and Canal street, so Mr. Fox have seen me. He was kind of manager there. He had seen me. He said: 'It is just the right man what I want to see. I am looking for you all over. You promised to come up Monday morning to work, and you didn't come up.' 'Well,' I said, 'I hardly believed the man what he says;' and he said: 'Well, Mr. Reiman wants to see you anyway. Come up now.' So I went upstairs again, and Mr. Reiman said to me: 'Don't you take my word for it? I gave you my word of honor as a gentleman.' . Mr. Reiman said to me 'that you are hired by me for a full year from now until next year this time.' And he said— I thought to myself: 'Well, now I can believe the man. He said different then.' 'If you don't believe me what I say, here is Mr. Beller, your own friend, your particular friend, and Mr. Fox. You can take them as witness.' So I thought this way: If a man talks about witness matters, all right. I thought I could believe the man. And after, I said, 'All right; if you talk this way from your own heart and soul, so I can start into work.' And he shook hands with me. He said: 'You don't need to be afraid. You take mine word again as a man of honor that I give you employment for a whole year.' "

The witness then testified that there was some talk about a deposit. That Mr. Reiman said:

" 'I want to be sure with you that you not go to leave me before the year is over.' I said, 'Well, what do you want of me then?' He said: 'Well, I want you to place $300, a deposit, for a security that you not go to leave me before the year is over.' So I said: 'Mr. Reiman, I am kind of short of money. I have not got always money to spare. I can spare yet for a moment $300, and not to keep it on me long, because I might need it in a month, or two or three months. I don't know when.' 'Well,' he said, 'you can bring me up $300, and any time you have any use for it you can get it back.' So I gave them the $300 the same day I was engaged, and I started in to work."

It appears that at this time a receipt for this money was given, reading as follows:

"New York, January 10, 1893.

"Received this day three hundred (300) dollars from Mr. Nathan Levy, as security to us for his good faith, honesty, and integrity, and as security to us for his conforming to the rules of our business, in connection with his position in our cutting department; and the consideration of this deposit of Mr. Levy to us is our paying to him thirty (30) dollars per week, with the three hundred (300) dollars security, instead of twenty-seven (27) dollars per week without this security.

"[Signed]　　　　　　　　　　　　　　　Children's Cloak Co."

Reiman and Fox were examined as to this transaction, and each swore that nothing was said about a hiring for a year. Mr. Beller said that he was not present at the hiring, and both Friedlander (the defendant) and Beller testified to statements made by the plaintiff that he had no contract for a year; that question having arisen between Fox and the plaintiff from certain statements which were reported to Fox as having been made by the plaintiff

of a hiring for a year. Reiman and Fox both testified that the original contract was for $27 a week, and that it was raised to $30 a week only in consideration of the fact of his putting up the $300 as security that he would not leave them so long as they wanted to employ him; and that the $300 was returned to .the plaintiff some time before his discharge. It may be true, as is claimed upon the part of the plaintiff, that the construction to be placed upon Mr. Beller's testimony was, when the plaintiff said that he had no contract for a year, it might have been inferred from the transaction that he had no contract in writing for a year. But when we consider the testimony of Reiman and Fox in connection with the receipt given, which so distinctly contradicts the testimony of the plaintiff in reference to the terms of the original agreement, it seems impossible to come to any other conclusion than that plaintiff testified falsely in regard to the question of the original hiring. It seems to be conclusively established that he was originally hired for $27 a week (which he swore was never spoken of), and that his salary was raised because of his deposit of $300, insuring the defendant of his services in hostility to the union with which the defendant was having a contest. In view of this written evidence, clearly impeaching the plaintiff in regard to what he considered a material part of this transaction,—namely, the agreement as to the original hiring,—no confidence whatever can be placed in his testimony in regard to the hiring for a year in opposition to that of the witnesses who testified that nothing was said with respect thereto.

We are of opinion, upon considering all the evidence in the case, that the jury were unauthorized to come to the conclusion which they did, and that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

BARRETT and INGRAHAM, JJ., concur.

O'BRIEN, J. (dissenting). We think that the issue here presented as to whether it was a weekly or a yearly hiring was, upon conflicting evidence, peculiarly a question for the jury. It is true that the plaintiff is outweighed in the number of witnesses, and the force of part of his testimony is impaired by a written receipt. But neither of these has such probative force as to justify us in disregarding the plaintiff's version, which is not only supported by his own evidence, but has certain corroborative circumstances, which may be briefly referred to. The witnesses, with the exception of one, who really knew nothing about the question of hiring, were, besides the defendant, his brother-in-law, who was the manager of his business, and the superintendent and an employé of defendant's; none of whom are to be regarded, any more than the defendant himself, as entirely disinterested witnesses. As to the discrepancy in the plaintiff's version, that he made a contract for $30, when the receipt shows that it had been increased from $27 to $30 at the time he made the deposit for which the receipt was given, this was not material upon

the main question, and is a circumstance to be weighed with all his testimony upon the question of his credibility, which was one for the jury.     It was shown that the plaintiff did not seek employment from the defendant, but that the latter zealously sought out and persistently urged the plaintiff to enter his employ; that the plaintiff at the time was a member of the union with which the defendant was at war; and that in entering such employment the plaintiff lost his status as a member of the union, and as a security for his faithful performance of the contract was obliged to deposit $300.     The jury had a right very properly to consider whether—if the defendant's version was true, that the employment was only by the week—they could have prevailed upon the plaintiff to make these sacrifices for so precarious employment; and they were, it seems to us, strong corroborative circumstances that the plaintiff's agreement was one for a year.     Nor do we attach much importance to the admissions claimed to have been made by the plaintiff as to the duration of his employment, it being a fair subject of criticism that at every point a disposition was shown by the defendant's witnesses to establish a weekly, as against a yearly, hiring, which would be unusual if there were no question in their minds at any time as to the duration of the employment.     Upon this question there was a clear conflict of evidence, and we do not think we should be justified in setting aside this verdict on the ground that it is clearly against the weight of evidence.     For this reason we think the judgment should be affirmed, with costs.

RUMSEY, J., concurs.